Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5057 | **DATE** | 3/5/2002 |
| **CASE TITLE** | Home Builders Association of Greater Chicago vs. U.S. Army Corps of Engineers, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiff's motion for leave to file a Fourth Amended Complaint (Doc. No. 38-1) is denied, and the case is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 3 | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | MAR 05 2002 date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | 3/5/2002 | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| ETV | courtroom deputy's initials | 02 MAR -5 PM 1:18 | | ETV | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOME BUILDERS ASSOCIATION OF GREATER CHICAGO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| U.S. ARMY CORPS OF ENGINEERS, CHICAGO DISTRICT, | ) ) ) | |
| and | ) ) | |
| LT. COL. ROGER A. GERBER, FORMER DISTRICT ENGINEER, CHICAGO DISTRICT U.S. ARMY CORPS OF ENGINEERS, | ) ) ) ) ) | No. 98 C 5057<br><br>Judge Rebecca Pallmeyer |
| and | ) ) | |
| LT. COL. PETER ROWAN FORMER DISTRICT ENGINEER, CHICAGO DISTRICT U.S. ARMY CORPS OF ENGINEERS, | ) ) ) ) ) | |
| and | ) ) | DOCKETED<br>MAR 0 5 2002 |
| COL. MARK A. RONCOLI, CURRENT DISTRICT ENGINEER, CHICAGO DISTRICT U.S. ARMY CORPS OF ENGINEERS, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Home Builders Association of Greater Chicago ("Plaintiff" or the "Association") brought this action against the United States Army Corps of Engineers ("Corps") and certain Corps officials (collectively "Defendants") to challenge an

Interagency Coordination Agreement ("ICA") executed by Defendants and other federal, state and local agencies. Plaintiff claims that the terms of the ICA exceed the Corps' statutory and regulatory authority, and subject Plaintiff's members to unlawful costs and delays in construction. In earlier rulings, the court has concluded that Plaintiff's allegations are insufficient. Plaintiff now moves for leave to file a Fourth Amended Complaint for declaratory and injunctive relief. For the reasons given below, Plaintiff's motion is denied.

## BACKGROUND

The factual and procedural background of this dispute are described in this court's ruling on Defendant's motion to dismiss Plaintiff's Third Amended Complaint and will not be reviewed in detail here. *See Home Builders Ass'n of Greater Chicago v. United States Army Corps of Eng'rs*, No. 98 C 5057, 2001 WL 293641 (N.D. Ill. Mar. 19, 2001). Briefly, in 1998 Defendants executed the ICA with the United States Department of Agriculture Natural Resources Conservation Service ("NRCS"), the Lake County Stormwater Management Commission ("SMC"), and the Lake County Soil and Water Conservation District ("SWCD"). The ICA, as revised in 1999, has the stated purpose of "increas[ing] cooperation and coordination between" the signatory agencies, all of which are involved in various ways with regulating soil erosion in Lake County, Illinois.[1] (1999 ICA, Exhibit 1 to Plaintiff's Fourth Amended Complaint ("FAC") at 1.) Under the ICA, the Corps' obligations, in relevant part, are as follows:

---

[1] From the pleadings before it, the court assumes that the ICA was last revised in 1999.

2

(1) Wherever appropriate, as a special condition of a Department of Army authorization, require the permittee to consult with the [ ]SMC on soil erosion and sediment control plans.

(2) At the Corps discretion, . . . require the permittee to submit a soil erosion and sediment control plan to the [ ]SMC for review and approval . . . [and] utilize the plan review comments to determine the adequacy of the applicant's soil erosion and sediment control plan . . .

(3) At the Corps discretion, as a condition of the Department of the Army permit, . . . require the permittee to schedule a preconstruction meeting with the [ ]SMC . . .

(4) If the Corps, NRCS, or [ ]SWCD receives a report of a soil erosion and sediment control issue on a site, the agencies will contact [ ]SMC [which] will investigate . . . and [prescribe necessary corrective action]. If the [ ]SMC fails to resolve a violation on an authorized permit site in a timely manner or if [ ]SMC requests the Corps assistance, the Corps will take [appropriate action].

(5) Request that [ ]SMC conduct on-site inspections during the active construction phase(s) of land development projects to determine whether site development is in compliance with the approved plan and Corps permit requirements . . . and determine adjustments needed to the approved plan. (*Id* at 3.)

Plaintiff brought this action alleging that the ICA impermissibly extends the statutory and regulatory authority of the Corps and that the ICA was adopted without sufficient notice and comment.

This court dismissed Plaintiff's First and Second Amended Complaints on ripeness and standing grounds. On March 19, 2001, this court dismissed the Association's Third Amended Complaint for lack of jurisdiction. *Home Builders Ass'n of Greater Chicago v. United States Army Corps of Eng'rs*, No. 98 C 5057, 2001 WL 293641 (N.D. Ill. Mar. 19, 2001). In so holding, the court noted that Plaintiff lacked standing to challenge the ICA because it had failed to allege an injury in fact that could be redressed by the suit. *Id.* at *9. Thus, Plaintiff's members who had already received permits under the ICA could not challenge injurious delays imposed by the ICA permit process, because the court could no longer do anything to redress the injuries. *Id.* at *8. Similarly, Plaintiff could not demonstrate that it had suffered an imminent injury from the Corps' case-by-case application of discretionary procedures under the ICA. *Id.* Plaintiff moved for leave to file a Fourth Amended Complaint on April 27, 2001.

## DISCUSSION

### A.  Standard of Review

The Federal Rules of Civil Procedure provide that after a party's initial amendment "as a matter of course," the district court's leave to amend "shall be freely given when justice so requires." FED.R.CIV.P. 15(a). The Supreme Court has clarified that factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility

4

of amendment" weigh against allowing amendment. *Forman v. Davis*, 371 U.S. 178, 182 (1962). *See also Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001). Thus, while leave to amend is liberally granted, courts should deny leave where the amendment merely alters the jurisdictional allegations of the original complaint but does not cure the underlying jurisdictional defects. *See Northrup Corp. v. AIL Sys., Inc.*, 959 F.2d 1424, 1429 (7th Cir. 1992).

## B. Final Agency Action

The Administrative Procedure Act limits nonstatutory judicial review to final agency actions. 5 U.S.C. § 704; *see also Western Illinois Home Health Care, Inc. v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998); *Abbs v. Sullivan*, 963 F.2d 918, 925-26 (7th Cir. 1992). As a general rule, the following conditions must be satisfied for agency action to be final: "First, the action must mark the consummation of the agency's decisionmaking process–it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *see also Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478 (2001) ("Only if the [Agency] has rendered its last word on the matter in question . . . is its action 'final' and thus reviewable.")

To determine whether an agency action is final, several significant facts include: (1) whether the challenged action is a definitive statement of the agency's position; (2) whether the action has the status of laws with penalties for noncompliance; (3)

whether the impact on the aggrieved party is direct and immediate; and (4) whether immediate compliance is expected. *See Atchison, Topeka and Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 441 (7th Cir. 1994); *Abbott Labs. v. Gardner*, 387 U.S. 136, 150-152 (1967); *see also Western Illinois Home Care*, 150 F.3d at 662. Courts deal with the "finality" element in a pragmatic way: the core question is simply "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Atchison*, 44 F.3d at 441 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). The principle that courts may review agency action only when such action is final serves several interests: it allows an agency the opportunity to apply its expertise and correct its mistakes, avoids disrupting the agency's processes, and relieves the courts from having to engage in "piecemeal review which is at the least inefficient and . . . might prove to [be] unnecessary." *DRG Funding Corp. v. Secretary of Hous. and Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996).

Plaintiff takes issue with this court's March 19, 2001 ruling that only the fourth and fifth provisions of the ICA constitute final agency action susceptible to judicial review. As noted in the court's prior opinion, the discretionary language of the first three provisions defeats the contention that they constitute final agency action on their face. Specifically, the provisions provide that the Corps *may* require a permittee to consult with the SMC in the permit process "wherever appropriate," (ICA at 3), *may* "[a]t the Corps discretion" require permittees to submit plans to the SMC (*Id.*), and

6

*may* "[a]t the Corps discretion" require a permittee to schedule preconstruction meetings with the SMC (*Id.*). The court simply can not conceive of a way in which these provisions could be fairly considered final actions, because they do not bind the Corps to any particular course of action. Put differently, the Corps' case-by-case determinations of how to address a prospective permittee's application are agency actions intervening between the ICA under challenge and any subsequent wrong that Plaintiff's members might suffer.[2] The court thus reiterates its prior conclusion that for the purposes of Plaintiff's motion to amend, only the fourth and fifth ICA provisions are final agency actions susceptible to judicial review.[3]

---

[2] The court is not persuaded by Plaintiff's argument that *Bennett v. Spear* compels the conclusion that all five ICA provisions are final agency action. In *Bennett*, the Supreme Court held that a Biological Opinion issued by the Fish and Wildlife Service constituted final agency action even though the Opinion would actually be implemented by the Bureau of Reclamation. *Bennett*, 520 U.S. at 177-78. The *Bennett* court's holding rested on determinations that the Biological Opinion a) represented the "consummation" of the Service's decisionmaking, and b) altered the legal regime within which the Bureau could act by limiting the scope of its discretion. *Id.* at 178. The court further distinguished prior cases where agency action was not determined to be final because it left subsequent actors with "absolute discretion" to observe or ignore the challenged agency action. *Id.* In this case, it would be incorrect to call the ICA the consummation of the Corps' decisionmaking, because the Corps can always render the ICA irrelevant by opting not to require a permit applicant to work with the SMC. Similarly, the broad language of the three ICA provisions does not alter the legal landscape because the Corps retains virtually unlimited discretion to fulfill its ICA responsibilities.

[3] Defendant contends that none of the five provisions are final agency action, but submits that under the law of the case doctrine, the court's prior holding must stand. Under the doctrine, there is a "presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the lawsuit." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "A judge may reexamine [her] ruling . . . if [s]he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if
(continued...)

7

## C. Standing

As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing by "competent proof" the familiar constitutional requirements of standing: (1) an "injury in fact" that is (a) concrete and not merely speculative, and (b) actual and imminent, not conjectural or hypothetical; (2) fairly traceable to the defendant; and (3) redressible by this action. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *FW/PBS, Inc, v. Dallas*, 493 U.S. 215, 231 (1990). "Competent proof" requires a showing by a preponderance of the evidence that standing exists. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999). Thus, while the court will accept all well-pleaded allegations of the complaint as true, plaintiff must support each element of the standing requirement "with the manner and degree of evidence required at later stages of litigation." *Id.* at 829 (quoting *Lujan* at 561).

In its March 19, 2001 ruling, this court advised that Plaintiff "must look to the non-discretionary provisions of the ICA . . . and show how those provisions are imposing tangible harm." *Home Builders Ass'n*, 2001 WL 293641, at *9. As noted above, the provisions in question a) articulate the Corps' agreement to contact SMC

---

³(...continued)
rescinding it would not cause undue harm to the party that had benefited from it." *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983). *See also Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227 (7th Cir. 1995). For the reasons already given, the court declines Plaintiff's invitation to revise its prior holding. This is not a case in which "the controlling law has changed. . . [or] additional evidence has emerged." *See Napoli v. Sears, Roebuck and Co.*, 858 F. Supp. 101, 102 (N.D. Ill. 1994).

to investigate any reports of soil erosion or sediment control issues and to take appropriate action against the offender if SMC does not do so, and b) authorize the SMC to conduct on-site inspections during the active construction phase of land development and to determine any necessary adjustments. With regard to the latter provision, the court emphasized that it was "not at all clear why Plaintiff would face . . . increased costs" when the Corps requested SMC to inspect sites belonging to Plaintiff's members. *Id.* Because the SMC might well inspect these sites on its own initiative, Plaintiff could only obtain standing to challenge this portion of the ICA by explaining how the Corps' involvement in the inspections was injurious. *Id. See also* ICA (the purpose of the SMC is to "[ensure] that development[s] meet performance standards for implementing soil erosion and sediment control plans for development sites.").

Plaintiff has responded by appending to its motion to amend an exhibit comprised of correspondence between the Corps and several area developers. ("Documents Showing Application of 1999 ICA in Lake County," Exhibit 5 to Plaintiff's FAC.) The court believes it has discretion to review these documents because they are effectively incorporated by reference into Plaintiff's complaint. In fact, the court has gone beyond the "cursory review" of this exhibit requested by Plaintiff, (Plaintiff's Brief in Support of its Motion to File Fourth Amended Complaint and Response to Defendants' Opposition ("Plaintiff's Brief" at 10), in order to determine whether the Exhibit establishes that Plaintiff has standing to proceed here.

The Exhibit consists of more than thirty documents generated in the course of

several companies' applications for construction permits from the Corps. Read in conjunction with Plaintiff's pleadings, the Exhibit raises three issues for analysis. First, these documents suggest that in several instances the Corps has exercised its discretion under the first three provisions of the ICA to require parties seeking environmental permits to submit plans, consult, or meet with the SMC. *See, e.g.,* 3/29/01 Corps Permit Compliance Certification to Prairie Creek of Kildeer (requiring submission of soil erosion and sediment control plan to SMC).[4] Plaintiff alleges "upon information and belief" that the Corps has conditioned permits on such consultations in every case. *See* Plaintiff's Fourth Amended Complaint ¶ 90. This allegation does not render the first three ICA provisions judicially reviewable "final agency action," however. Even accepting Plaintiff's allegations as true, as the court must at this time, allowing such allegations to render discretionary agency actions "final" for the purposes of judicial review would render the finality requirement meaningless. Under Plaintiff's theory, any grant of discretion could be characterized as a "final agency action" by simply alleging that the discretion was always exercised in the same way.[5]

---

[4] The court notes that its citations to the ninety-plus page Exhibit 5 would have been more helpful to readers had the Exhibit included conventional courtesies such as a table of contents, page numbering, or the chronological ordering of related documents.

[5] The pleadings before the court suggest that for purposes of judicial reviewability, the Corps's final agency action under the ICA may be its direction to individual builders to consult with, submit plans to, or meet the SMC. Individual builders who have received such directions from the Corps may be able to obtain judicial review of the Corps's action, if they can satisfy familiar constitutional and prudential standing requirements. To the court's knowledge, none of the developers
(continued...)

10

Second, turning to the ICA provisions that this court has held do constitute final agency actions, nothing in the Exhibit pertains to the fourth ICA provision. None of the documents pertain to an SMC investigation ordered by the Corps after receiving a report of problems on construction sites, so the fourth ICA provision is simply irrelevant here.

Finally, Plaintiff's Exhibit includes documents pertaining to Corps-requested inspections by the SMC, contemplated by the fifth provision of the ICA. *See* 4/6/00 SMC Performance Guarantee (contemplating SMC inspections of construction site). Plaintiff has failed to address the concerns raised in the court's last opinion, however. While it appears that the SMC is inspecting or planning to inspect construction sites under the ICA, Plaintiff has not shown how the *Corps' involvement* in these inspections is in any way injurious. Because Plaintiff has not alleged that the SMC would not have undertaken these inspections under its own independent authority, the court concludes that Plaintiff has failed to demonstrate that a successful challenge to the ICA would redress any injuries done by the SMC inspections.[6] This court may

---

[5](...continued)
whose correspondence comprises Exhibit 5 has brought an individual action against Defendant. Notably, several of the developers obtained permits after meeting with or submitting plans to the SMC. Once these permits were obtained, it would be difficult for a court to redress injuries such as construction delays allegedly caused by the Corps.

[6] Defendants have proffered municipal ordinances stating that the SMC may conduct inspections at "any stage in the construction process" and may take enforcement steps–even including stopping ongoing construction–if they find environmental problems requiring correction. In light of the deficiencies in Plaintiff's
(continued...)

11

not assume jurisdiction over a case which Plaintiff lacks standing to bring. Accordingly, in light of Plaintiff's repeated failures to cure the jurisdictional defects of its numerous complaints, the court denies the motion to amend.

## CONCLUSION

For the reasons set out above, Plaintiff's motion for leave to file a Fourth Amended Complaint (Doc. No. 38-1) is denied, and the case is dismissed with prejudice.

ENTER:

_____
REBECCA R. PALLMEYER
United States District Judge

Date: March 5, 2002

---

[6](...continued)
pleadings, the court need not determine whether it may take judicial notice of the SMC's authority under municipal ordinance.